IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIM. NO: 22-CR-240 (RDB)** |
| | : | |
| **JONAS PURISCH,** | : | |
| | : | |
| **Defendant** | : | |

..oo0oo..

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned attorneys, hereby submits this sentencing memorandum regarding defendant Jonas Purisch. The first time that Mr. Purisch pleaded guilty to criminal tax offenses, in 2013, before United States District Judge James K. Bredar, the Court sentenced him to three months imprisonment; now, with a new employment tax scheme at least an order of magnitude larger before the Court, the government submits that a much longer term of imprisonment is warranted.

For the more recent scheme, Purisch reaped the benefits of operating a payroll for his employee leasing business while intentionally disregarding his duty to collect, account for, and pay over the payroll taxes of those employees. Purisch's actions caused millions of dollars of tax loss. His attempts to game the system were unfair to law-abiding taxpayers and business owners, and warrant a sentence of incarceration.

On October 12, 2022, pursuant to a plea agreement with the United States (the "Plea Agreement"), the defendant pleaded guilty to a one-count information charging him with willful failure to pay over employment taxes, in violation of 26 U.S.C. § 7202 (Doc. 1). Based on the factors set forth in 18 U.S.C. § 3553(a), and the U.S. Sentencing Guidelines, the government

1

requests that the Court sentence the defendant to a term of incarceration of 36 months, which is within the guidelines range of 33 to 41 months, as determined by the stipulations in the Plea Agreement and the findings in the Presentence Report ("PSR"), to be followed by a period of supervised release. Additionally, the government requests that the Court order the defendant to pay $3,400,578.86 in restitution to the Internal Revenue Service ("IRS") as agreed by the parties in the Plea Agreement.

**I.      Offense Conduct**

The offense conduct is set forth in paragraphs six through eleven of the draft presentence investigation report.  The defendant, Jonas Purisch, was a resident of Baltimore, Maryland and owned and controlled Community Staffing Network, Inc. ("CSN"), a temporary staffing agency that leased employees to manufacturing businesses in the Baltimore area from 2013 through 2018.   Defendant formed CSN in April 2012 as a Maryland corporation with the help of another individual known to Defendant.   That individual served as CSN's resident agent and nominal owner, although in fact Defendant held sole ownership of CSN and controlled its operations.   The formation of CSN occurred during an ongoing criminal tax investigation of Defendant by the Criminal Investigation division of the IRS.

In connection with that investigation, Defendant pleaded guilty in April 2013 in the District of Maryland to a two-count information charging one count of filing a false individual income tax return, in violation of Title 26, U.S.C. § 7206(1), and one count of failure to file a tax return, in violation of Title 26, U.S.C. § 7203.   On June 24, 2013, the court sentenced Defendant to three months in prison and one year of supervised release.   It

also ordered $210,019.04 in restitution to the IRS and imposed $30,000 in fines.

Relatively soon thereafter, Mr. Purisch resumed his employee leasing activity. Then,a from the first quarter of 2013 through the first quarter of 2021, Defendant negotiated several contracts with third-party businesses in Maryland to provide workers for their operations.   Defendant used CSN and two additional entities he owned and controlled to fulfill the staffing requirements under the contracts.   In January 2018, Defendant formed Titan Staffing Network, Inc. ("TSN") in Maryland, listing himself as the owner and registered agent.   Then, in July 2018, Purisch formed Titan Services, LLC ("TSL"), also in Maryland, and listed a second individual as its resident agent.   With TSN and TSL, Mr. Purisch embarked on a new tax fraud scheme only several years following his release from prison for filing false personal tax returns.

Throughout the entire period that the contracts with the third-party businesses were in effect, Defendant owned and controlled CSN, TSN, and TSL, and was responsible for their operations, including the withholding and payment of employment taxes.   Despite his obligation to withhold and pay over the employment taxes on behalf of the employees of his companies, Defendant willfully failed to pay over to the IRS more than $2 million of trust fund taxes owed by TSN, and TSL on behalf of its employees for the quarters ending March 31, 2018 through March 31, 2021.

As set forth by the Plea Agreement between the parties, the total tax loss caused by Defendant's conduct, including federal employment taxes and income taxes for employees of TSN and TSL, was more than $1,500,000 but not more than $3,500,000.

**II.    Notice of Government Witnesses for Sentencing**

The government hereby provides notice of its intent to call Revenue Agent Paul Luca of the Internal Revenue Service at sentencing, if necessary, to testify regarding computations concerning the employment tax liabilities of TSN and TSL that are the basis for the total amount of restitution stated in the Plea Agreement.  *See* Attach. A, Appendices for TSN Employment Tax Liability, Attach B. Appendices for TSL Employment Tax Liability. Should Revenue Agent Luca be unavailable the day of sentencing and there is a need for testimony concerning the calculations in Attachments A and B, the government will instead call Special Agent Marvin Harris of the IRS-Criminal Investigation to testify regarding the same matters.

**III.   Sentencing Considerations**

    **A.  Statutory Maximum Sentence**

The defendant was convicted of violating 26 U.S.C. § 7202, which carries a maximum sentence of five years in prison, three years of supervised release, a $250,000 fine, or, in the alternative, not more than the greater of twice the gross gain to the defendant or twice the gross loss to any other person, and a $100 special assessment.

    **B.  United States Sentencing Guidelines**

Even though the U.S. Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005).  The U.S. Probation Office has calculated the defendant's total offense level to be 19:

    Base Offense Level (based on Tax Loss of $255,433):     22

4

*See* U.S.S.G. §§ 2T1.4, 2T4.1(F)

| | |
|---|---|
| Adjusted Offense Level: | 22 |
| Acceptance of Responsibility<br>*See* U.S.S.G. §3E1.1(a) | -2 |
| Acceptance of Responsibility<br>*See* U.S.S.G. §3E1.1(b) | -1 |
| Total Offense Level | 19 |

*See* PSR, ¶¶ 16-25. The factual basis of U.S. Probation's calculation of the guidelines is consistent with the evidence in the case and matches the terms of the Plea Agreement.

As the defendant has a prior criminal history, his criminal history category is II. *See* PSR, ¶¶ 28-29. A total offense level of 19 and a criminal history category of II corresponds to a sentencing guidelines range of 33 to 41 months.

### IV.    Other 18 U.S.C. § 3553(a) Sentencing Factors

In addition to the U.S. Sentencing Guidelines, the Court must consider the other factors set forth in 18 U.S.C. § 3553(a). For this case, a sentence within the range advised by the Sentencing Guidelines appropriately considers the nature and circumstances of the offense; reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; protects the public from further crimes by the defendant; affords adequate deterrence; is consistent with the Sentencing Commission's policy statements on the need for deterrence in tax crimes; and is no greater than necessary to accomplish these purposes. 18 U.S.C. § 3553(a)(1), (2), (5), (6). Specifically, the Court should sentence the defendant to a term of imprisonment for the following reasons:

### A.   *Nature, Circumstances, and Seriousness of the Offenses*

By law, the defendant was required to withhold federal income tax, social security, and Medicare from the wages of his employees, hold those funds in trust, and then pay them over the government when due.  While failing to pay over one's own taxes is serious and significant, failing to collect and pay over taxes one was legally required to withhold from other taxpayers is particularly egregious, as employers are entrusted by the government to accurately withhold, account for, and pay over these taxes.

The defendant, Jonas Purisch, took deliberate and willful steps to shirk his responsibilities as an employer.  Over a period of more than three years, from the first quarter of 2018 through the first quarter of 2021, Mr. Purisch operated an employee leasing business with a substantial payroll, yet he did not withhold and pay over more than $3 million owed on behalf of those leased employees and owed by the business entities he controlled.

### B.  *Need to Promote Respect for the Law and Protect from Further Crimes*

The defendant's actions over a period of more than three years exhibit his lack of respect for the nation's tax laws.   That conduct began only several years after the defendant's supervised release ended following his conviction and incarceration for filing a false federal individual income tax return.   In light of the defendant's recidivism and the similarities between the facts underlying his 2013 conviction and the present offense, the need for deterrence is both plain and acute.

The federal tax system relies on the honesty and cooperation of all its citizens; failure to pay one's tax obligations puts additional burdens on every other taxpaying citizen.  Every tax dollar not collected is money that cannot be used for the myriad funding obligations of the

6

federal government.   A sentence within the guideline range is appropriate to prevent future violations of the tax laws, particularly for an employer entrusted with the duty to account for and pay over trust fund taxes.  Moreover, by underpaying FICA taxes, the defendant was able to put his business in an advantageous position vis-à-vis other businesses that are trying to be competitive while still complying with their tax obligations.

Although the defendant has agreed to pay restitution, the amount of restitution remains unpaid, and the agreement to pay itself should not dissuade the Court from a sentence of incarceration.  "Restitution is desirable but so is the deterrence of white-collar crime" and "the minimization of discrepancies between white- and blue-collar offenses ......." *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006).

    **C.  *Need to Afford Adequate Deterrence***

In addition to the need for specific deterrence, the need for general deterrence in this case similarly warrants a strong sentence.  In some sense, the need for deterrence in tax-fraud sentences—more so than perhaps other crimes—is apparent from the relevant numbers: the number of taxpayers in the United States far exceeds the number of auditors and criminal investigators available at the IRS.  The Sentencing Guidelines recognize this dynamic:

> Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.  Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch. 2, pt. T, introductory cmt.

Conduct such as the defendant's undermines the trust that is essential to the proper functioning of our revenue laws.   Purisch's actions forced other community members to carry an extra

burden to fund the work of the government. This case presents a powerful need and opportunity for this Court to deter similar conduct. Absent such deterrence, other business owners with similar business models, will see the result in this case and cynically conclude that the risks of being caught and punished for this type of tax fraud do not outweigh the potential rewards. Deterrence is thus critical not only to ensure that a particular individual pays the taxes that the individual owes, but also to ensure that others continue to be honest taxpayers.

The Fourth Circuit has cited with approval the commentary to the Guidelines that recognizes the need for deterrence given the relative infrequency of criminal tax prosecutions. *See United States v. Engle*, 592 F.3d 495, 501 (4th Cir. 2010):

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*Id.* To provide such deterrence, this case calls for a sentence of imprisonment well within the applicable Guidelines range.

### D. *Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct*

Generally, the need to avoid unwarranted sentence disparities weighs in favor of imposing a sentence within the advisory guidelines range. The criminal tax provisions of the U.S. Sentencing Guidelines were established explicitly in part "to reduce disparity in sentencing for tax offenses." U.S.S.G. §2T1.1 cmt. background; *see also* 28 U.S.C. § 991(b)(1)(B) (purposes of U.S. Sentencing Guidelines). And as the Supreme Court stated,

"For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007) (referencing *Rita v. United States*, 551 U.S. 338, 349-350 (2007)).

A sentence imposed in a recent employment tax case in this district suggest that the government's recommended term of imprisonment is appropriate. As recently as July 2021, the Court sentenced an employer of physical and occupational therapists to a term of fifteen months in prison based on a finding that the defendant failed to pay the IRS employment taxes of approximately $1,690,000. *See United States v. Shende*, 21-CR-91 (JKB). Not only is the loss amount greater in this case, but it concerns a recidivist defendant who began his criminal course of conduct shortly after the period of supervision ended for his earlier tax offense. Accordingly, the facts of this case call for a longer sentence by comparison.

## V.     Restitution and Supervised Release

The Court may order restitution for Title 26 tax offenses as negotiated in a Plea Agreement. 18 U.S.C. § 3663(a)(3). Per the terms of the Plea Agreement, Purisch has agreed to pay restitution in the amount of $3,400,578.86.

For the above-stated reasons, and as agreed to by the parties in the Plea Agreement, the government requests that the Court impose, as part of the sentence, an order of restitution to the IRS in the amount of $3,400,578.86, relating to Mr. Purisch's willful failure to collect, account for, and pay over employment taxes. The government furthermore requests that the Court order the restitution to be payable immediately, even if the defendant must make installment

payments toward the total amount.[1]  As part of any order of restitution, the government requests that the Court incorporate by reference the Attachments to this memorandum and make a record that restitution totaling $3,400,578.86 be based on $1,477,290.36 for Titan Staffing Network, Inc., for the quarter ending March 31, 2018 through the quarter ending March 31, 2021, and $1,923,288.50 for Titan Services LLC, for the quarter ending September 30, 2018 through the quarter ending March 31, 2021, as specified further in the tables below.

For Titan Staffing Network, Inc.:

| Quarter Ending | Employee's Share of FICA &Income Taxes | Employer's Share of FICA |
|---|---|---|
| March 31, 2018 | $1,569.86 | $666.86 |
| June 30, 2018 | $34,981.73 | $25,662.88 |
| September 30, 2018 | $75,650.44 | $62,152.60 |
| December 31, 2018 | $100,605.93 | $71,848.60 |
| March 31, 2019 | $42,874.83 | $34,719.03 |
| June 30, 2019 | $59,264.31 | $47,370.90 |
| September 30, 2019 | $97,533.18 | $79,041.67 |
| December 31, 2019 | $90,501.07 | $71,772.86 |
| March 31, 2020 | $63,169.92 | $51,543.56 |
| June 30, 2020 | $51,080.63 | $37,940.91 |
| September 30, 2020 | $93,722.68 | $68,237.55 |
| December 31, 2020 | $79,578.49 | $55,210.27 |
| March 31, 2021 | $48,140.92 | $32,448.68 |

For Titan Services LLC:

| Quarter Ending | Employee's Share of FICA &Income Taxes | Employer's Share of FICA |
|---|---|---|
| September 30, 2018 | --- | $8,113.12 |
| December 31, 2018 | $58,532.65 | $53,797.15 |
| March 31, 2019 | $34,229.86 | $30,458.86 |
| June 30, 2019 | $28,516.85 | $23,243.85 |

---

[1] This request is designed to protect the IRS's ability to assess and collect restitution after any period of probation or supervised release has expired.

10

| | | |
|---|---|---|
| September 30, 2019 | $28,115.07 | $24,500.07 |
| December 31, 2019 | $31,810.82 | $27,076.82 |
| March 31, 2020 | $36,626.06 | $30,372.06 |
| June 30, 2020 | $132,963.78 | $83,946.78 |
| September 30, 2020 | $219,170.72 | $125,956.72 |
| December 31, 2020 | $283,049.30 | $153,064.40 |
| March 31, 2021 | $326,473.83 | $183,269.73 |

Finally, the government requests that the Court impose a three-year term of supervised release.

## VI. Conclusion

The United States relies upon the honesty of taxpayers to fund the public fisc. The defendant made a deliberate choice to take advantage of the federal tax system at the expense of the United States and of other honest taxpayers, even after he had served time in prison for earlier federal tax offenses.

//

//

//

//

//

//

//

//

//

//

For the aforementioned reasons, the Government recommends that this Court sentence the defendant, Jonas Purisch, to a term of imprisonment of 36 months, a term within the Sentencing Guidelines range of 33 months to 41 months.  Such a sentence is appropriate in this case and consistent with the U.S. Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).  The government further requests that the Court order that the defendant pay restitution to the IRS in the amount of $3,400,578.86, payable immediately, and orders the defendant to serve a three-year period of supervised release following incarceration.

Date:  November 28, 2022

                                        Respectfully submitted,

                                        DAVID A. HUBBERT
                                        Deputy Assistant Attorney General
                                        U.S. Department of Justice
                                        Tax Division

By: **/s/ Michael C. Vasiliadis**
      Michael C. Vasiliadis
      Trial Attorney
      United States Department of Justice
      150 M St. N.E., Room 1.114
      Washington, DC 20002
      (202) 514-1102
      michael.c.vasiliadis@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that this document, filed through the ECF system, will be sent, on November 28, 2022, electronically, to the registered participants as identified on the Notice of Electronic Filing, and that paper copies will be sent to any non-registered participants.

       **/s/ Michael C. Vasiliadis**
Michael C. Vasiliadis
Trial Attorney